# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2015 JAN 12  PM 2: 27

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

Civil Action No.  **15-cv-72-GPG**

(To be supplied by the court)

THE WATERSHED OF THE MIDDLE FORK OF THE  , Plaintiff (s),
SOUTH PLATTE RIVER, PARK COUNTY,
COLORADO,

THE SOUTH PARK COALITION, a Non-Profit
Corporation
531 Front Street
Post Office Box 156
Fairplay, Colorado,

and,

RICHARD G. HAMILTON, pro se
Registered Agent of The South Park Coalition
531 Front Street
Post Office Box 156
Fairplay, Colorado .

v.

ALMA PLACER MINE                                    , Defendant(s),
2040 W. Hamilton Place
Englewood, Colorado 80110

and,

JIM MURRAY
High Mountain Mining Company
3040 S. Vallejo Street
Englewood, Colorado 80110

_____       Defendant(s)

(Rev. 07/06)                          1

# COMPLAINT

## INTRODUCTION

1.     This is a civil action brought under the citizen suit provision, 33 U.S.C. §1365, of the Federal Water Pollution Control Act (commonly known as the Clean Water Act and hereinafter referred to as the CWA), 33 U.S.C. §§1251 et seq,. Defendants have discharged pollutants into the waters of the United States without being in possession of a National Discharge Pollutant Elimination System ( N. P. D. E. S. ) permit – an act in violation of §301(a) of the CWA, 33 U.S.C. §1311(a).

2.     Plaintiffs seek a declaratory judgment, injunctive relief, remedial relief, the imposition of civil penalties, and the award of costs, including attorney and expert witness fees.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over the claims specified in this Complaint pursuant to 33 U.S.C. §1365(a) and 28 U.S.C. §1331. The relief requested is authorized pursuant to 33 U.S.C. §§1319 and 1365(a), and 28 U.S.C. §§ 2201 and 2202.

4.     In compliance with 33 U.S.C. §1365(b)(1)(A), on October 28, 2014 plaintiffs gave notice of the violations specified in this complaint and of their intent to file suit to the defendants, to the Administrator of the United States

Environmental Protection Agency (EPA), and to the State of Colorado. A copy of the notice is attached hereto as Exhibit A.

5.        Sixty days have passed since the notice was served, and the violations complained of in the notice letter are reasonably likely to continue. Neither the United States Environmental Protection Agency (US EPA) nor the Colorado Department of the Public Health and the Environment (C.D.P.H.E.) has commenced or is prosecuting a civil or criminal action to redress the violations.

6.        Venue is appropriate pursuant to Section 505(c)(l) of the CWA, 33 U.S.C. §1365(c)(l), because the sources of violations complained of have occurred in the District.

## PARTIES

7.   Plaintiff:   THE WATERSHED OF THE MIDDLE FORK OF THE SOUTH PLATTE RIVER   is a publicly recognized and regulated entity

As noted within the Colorado Department of Public Health and Environment Regulation # 38 - Water Quality Control Commission – The Watershed of the Middle Fork of the South Platte River in Park County is designated as: *Upper South Platte Segment 15 - page 1, including segment 2.*

Plaintiff:   THE SOUTH PARK COALITION – a Colorado corporation, located at Fairplay, Colorado whose address is P. O. Box 156, Fairplay, Colorado 80440-0156.

(Rev. 07/06)                                              3

Plaintiff:  RICHARD G. HAMILTON_____ is a citizen of Colorado____
who live(s) at or is/are located at the following address:
531 Front Street,  Post Office Box 156,  Fairplay, Colorado  80440 -0156.

8.   Defendant: THE ALMA PLACER MINE          is a placer
     :                                         mine
                                               processing
                                               facility
located at the legal address: coordinates 39° 17′ 3″ N / 106° 3′ 48″ W Park County,
Colorado, within Section 1, Township 9S, Range 78W, of the 6th. P.M.

9.   Defendant JIM MURRAY                      is a citizen of Colorado
who live(s) at or is/are located at the following address:

High Mountain Mining Company  3040 S. Vallejo St. Englewood, CO  80110

## PLAINTIFFS

10.   THE WATERSHED OF THE MIDDLE FORK OF THE SOUTH PLATTE RIVER OF
PARK COUNTY, COLORADO is recognized, organized and regulated distinct geo-
hydrological unit administered as separate and distinct entity as noted within the
Colorado Department of Public Health and Environment Regulation # 38 - Water
Quality Control Commission. The Watershed of the Middle Fork of the South Platte
River in Park County is by Colorado regulatory agencies as: *Upper South Platte
Segment 15 - page 1, including segment 2.*

11.   THE SOUTH PARK COALITION (T.S.P.C.) is an environmental, public interest
and public trust advocacy non-profit organization working to protect and enhance
the natural resources of Park County, Colorado whose area-of-interest boundaries
encompass the South Park Basin region of Park County, a land form in the center of
the geographical region of Colorado and a source water basin-of-origin watershed
for millions of Colorado residents residing in Colorado Front Range communities.

Through advocacy, conservation efforts, legislative, legal, and regulatory-process participation, representing the corporation's membership (specifically) and the regions ecology (generally), The South Park Coalition, T.S.P.C., has standing in this suit to protect its own interests, and the interests of its individual members in a representative capacity, and those interests of the lands, waters, wildlife and the region's cultural and ecological heritage(s).  T.S.P.C's purposes and intents are adversely affected by defendants' discharges, which degrade the waters and adjacent lands and impair the habitability, the recreational value, and aesthetic benefits of local communities and to the public.

ARTICLES OF INCORPORATION - THE SOUTH PARK COALITION

ARTICLE II - PURPOSE of the CORPORATION

*"The purpose of the corporation is to provide a non-profit corporation as a legal entity enabling a citizen advocacy group, The South Park Coalition, whose purpose is to foster and undertake responsible legal and environmental protection for the lands and waters in South Park, Park County, Colorado as those protections may be needed to respond to natural resource development proposals in the South Park region of Park County, Colorado. The South Park Coalition shall have as its purpose the fostering of responsible natural resource development activities within the South Park region of Park County, and, as a corporation, shall seek to influence and provide advocacy and legal collective concerns of the members of The South Park Coalition to governments and to the public, generally, and politically, so as to insist upon governmental public trust responsibilities for the stewardship and protection of all the elements of the natural environment in South Park, Park County, Colorado."*

THE SOUTH PARK COALITION (T.S.P.C.) members include individuals and organizations from across the state of Colorado, the majority of whom reside in Park, Summit, Jefferson and Denver Counties, in Colorado, in or in proximity to the general vicinity of the South Park region of Park County.

The environmental, economic, health, aesthetic, and recreational interests of

T.S.P.C's members have been, and will continue to be adversely affected by defendants' illegal, un-permitted discharges into waters of the United States.

Members of T.S.P.C. use and enjoy the waters and lands which were impacted by the discharge(s) from the defendants' mining and processing facilities, including waters downstream from defendants' discharges into waters of the United States. Defendants' discharges flowed into the Middle Fork of the South Platte River, and ultimately into the Town of Fairplay's recreation facility at the "Fairplay Beach".

The South Park Coalition's members specifically use, recreate in, and enjoy these areas within the Watershed of the Middle Fork of the South Platte River in Park County in the following ways:

a.    T.S.P.C's members live within the watershed impacted by discharges from defendants' placer mine and mine processing facility;

b.    T.S.P.C's members earn a living on the waters impacted by discharges from defendants' placer mine and mine processing facility.

c.    T.S.P.C's members recreate, or would recreate, by fishing, in and around the waters impacted by discharges from defendants' placer mine and mine processing facility.

d.    T.S.P.C's members observe and enjoy wildlife in the watershed around defendants' placer mine and mine processing facility.

e.    T.S.P.C.'s members have an aesthetic and health interest in keeping the waters in the vicinity of defendants' placer mine and mine processing facility free of discharged pollutants.

12.    RICHARD G. HAMILTON, who resides at 531 Front Street, Fairplay, Colorado, 80440- 0156,  who is acting as *pro se* counsel for the Plaintiff(s), is identified within the South Park and Park County community as a co-founding officer of,  and current director of, and is active as, the Registered Agent for The South Park Coalition; and is also known within the community, and within Colorado, as a public interest and public trust advocate seeking stewardship for the protection and conservation lands and waters of South Park, Park County, as well as for those

lands and waters of Colorado's natural ecosystems and environments by notoriously advocating for the defense of the health of waters of the South Park Basin in Park County, Colorado.

Plaintiff Richard G. Hamilton (résumé attached as exhibit) is a registered lobbyist at the Colorado legislature for The South Park Coalition (T.S.P.C.), and is also the registered lobbyist for Action for the Public Trust (APT), an organization sponsoring the adoption of a Public Trust Doctrine for water in Colorado.

## JURISDICTION

13.   33 U.S.C. §1365, of the Federal Water Pollution Control Act (commonly known as the Clean Water Act and, hereinafter, referred to as the CWA); 33 U.S.C. §§1251 et seq.; and, under §301(a) of the CWA, 33 U.S.C. §1311(a).

## STANDING

14.  THE WATERSHED OF THE MIDDLE FORK OF THE SOUTH PLATTE RIVER IN PARK COUNTY, COLORADO, as a recognized and regulated natural resource defined entity, is acting as an injured legally-entitled citizen, and as a "person", impacted by the defendant's neglect of compliance with provisions of the Clean Water Act, and does stand before the United States District Court for the District of Colorado in this instant case as a Plaintiff capable, under 33 U.S.C. §1365, of commencing a civil action on its own behalf against any person who has been alleged to be in violation of an effluent standard or limitation under this Chapter 26 - WATER POLLUTION PREVENTION AND CONTROL, SUBCHAPTER V - GENERAL PROVISIONS, Title 33 - NAVIGATION AND NAVIGABLE WATERS, 33 U.S.C.

STANDING REQUIREMENTS:
- *of injury-in-fact* (in the instant situation documented by (1.) Colorado Division of

Reclamation, Mining, and Safety Minerals Program Inspection Report ID # M-1985-029 ( Alma Placer Mine / High Country Mining Co., LLC), October 16, 2014, – see Attachment B; (2.) Colorado Division of Reclamation, Mining, and Safety, Department of Natural Resources "Finding of Fact, Conclusions of Law and Order" Board Order of December 5, 2014 – see Attachment C; (3.) communication from the Colorado Water Quality Control Division Clean Water Compliance Unit Manager Nathan Moore indicating ". . . not able to identify an active NPDES / CDPS discharge permit associated with the facility [[Alma Placer Mine]]" – see Attachment D; (4.) County of Park and Town of Fairplay November 6, 2014 letter to the Mined Land Reclamation Board RE: Reported Violation M-1985-029 – see Attachment E});

- *of causation* where the Registered Agent of the South Platte Coalition did physically witness and did thereupon travel to the site of the discharge of materials into the waters of the Middle Fork of the South Platte River ( a.k.a. the "waters of the United States") and did thereafter witness a reduction in the activities of aquatic invertebrates in heavily-used recreational and fishing locations on the River even some six (6) miles from the point of discharge;

- *of redressability* so that it will be most likely, as opposed to merely speculative, that a favorable court decision will redress the injury.

and,

- the *"Zone of injury"*, where the injury is the kind of injury that Congress expected might be addressed under the statute.

*Ripeness* – the issues presented here were matters that did take place, and did result in injury to citizens, to fisheries, to aquatic invertebrates, to local economies, and to water resource physical impoundments that local communities had invested extensive monies in development and preservation.

*Mootness* - legal proceedings with regard to the inaction of the defendants with regard

to compliance with the Clean Water Act will have an effect, such that future events will be recognized as not being beyond the reach of the law. The practical significance of judicial review of the matter of discharges from place mine operations to the waters of the United States within the Watershed of the Middle Fork of the South Platte River in Park County will be a realization that local peoples and special places and natural environments cannot be deprived of well-being and that these places being subject to injury will not be tolerated.

*Political Question* – this Court is the appropriate venue forum in which to hear the case. The federal – question in this instant proceeding - is that, with regard to subject matter jurisdiction, it is within the jurisdiction of the United States federal courts to hear this civil case due to the fact that the plaintiffs have here alleged a violation of federal law. "The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title."

---

15.    Briefly state the background of your case:

The defendant(s), the Alma Placer Mine and High Country Mining Co., LLC, operated a placer mine facility in the vicinity of Alma, Colorado, which placer mine facility did discharge placer mine process waste materials to the Middle Fork of the South Platte River ( "waters of the United States") on October 3rd. and 4th. of 2014.

The following insertion is a copy from the record of proceedings from the Colorado Department of Natural Resources ( D.N.R.)/ Division of Reclamation, Mining, and Safety Minerals Program ( M.L.R.B.) ( see EXHIBIT B  and EXHIBIT C in the attached APPENDIX hereto) that presents a comprehensive summary of the events of the Alma Placer Mine's discharges of mine process materials that impacted the "waters of the United States" without having been issued a permit as mandated within

provisions of the federal Clean Water Act's required National Pollutant Discharge Elimination System ( N.P.D.E.S.) for any discharge to such waters.

[ [ FROM:   The *Inspection Report ID # M-1985-029 (Alma Placer Mine / High Country Mining Co., LLC)*, October 16, 2014 (Colorado Division of Reclamation, Mining, and Safety Minerals Program): and, FROM *"Finding of Fact, Conclusions of Law and Order"* Mine Land Reclamation Board - *Board Order of December 5, 2014*. Colorado Division of Reclamation, Mining, and Safety, Department of Natural Resources:] ]

*To wit:*   (excerpts from the <u>Finding of Fact, Conclusions of Law and Order</u>).

"THIS MATTER came before the Mined Land Reclamation Board ("Board") on November 19, 2014 in Denver, Colorado to consider a possible violation by High Mountain Mining Company ("Operator"), cease and desist order, corrective actions, and civil penalties for failing to follow the conditions of an order, permit, or regulation; failing to minimize disturbances to the prevailing hydrologic balance; and failing to protect areas outside of the affected land from slides or damage, file number M-1985-029. Michael Cunningham appeared on behalf of the Division of Reclamation, Mining and Safety ("Division"). Greg Lewicki, Jim Murray, and Tom Gibson appeared on behalf of the Operator.

"The Board, having considered the parties' presentations, and being fully informed of the facts in the matter, enters the following:

FINDINGS OF FACT   (excerpts from the original)

"A.   The Operator holds a 112 permit for a 216.1-acre gold, sand,  and gravel operation located in the NE *1:4* of Section 12, Township 9 South, Range 78 West, 6th Principal Meridian in Park County, Colorado, permit number M-1985- The site, known as the Alma Placer Mine, is located near Alma, Colorado.

"B.   On October 3, 2014, the Division conducted an inspection of the site and the Middle Fork of the South Platte River. Jim Murray, Tom Gibson, and Alanis

Townsend attend the inspection on behalf of the Operator. The Division observed a fresh water intake pipe, intended to divert water from the river to mine site, located at an elevation below an overflow pipe from Pond 4  . . . (t)he Division found that the fresh water intake pipe was the potential source of the unpermitted sediment discharge.  . . . (t)he Division found that the release of sediment from the mine impacted at least 6.0 miles of the Middle Fork of the South Platte River, from Alma to Fairplay, Colorado.

16.       The Colorado Department of Public Health and Environment ( C.D.P.H.E.), did comment on the status of any N.P.D.E.S. permit having been issued by that state water quality agency, via electronic correspondence on Tuesday October 28th, 2014 2:05 PM, by indicating: ". . . the Water Quality Control Division is not able to identify an active NPDES/CDPS discharge permit associated with the facility." (see EXHIBIT D in the attached APPENDIX hereto).

---

**FIRST CLAIM FOR RELIEF**
**AND SUPPORTING FACTUAL ALLEGATIONS**
(Please number your paragraphs and attach any necessary additional pages.)

1.       The defendants herein, the Alma Placer Mine and Jim Murray, if they are determined by the Federal District Court for the District of Colorado to having been in violation of provisions of the Clean Water Act, 33 U.S.C. §§1251 et seq., and, specifically in violation of provisions at §301(a), 33 U.S.C. §1311(a) which prohibits releases of any materials to the "waters of the United States", at this instance, into the Middle Fork of the South Platte River, without having obtained a National Pollutant Discharge Elimination System ( N.P.D.E.S.) permit, Section 402, 33 U.S.C. §

1342, should not only be assessed a penalty as provided by law, section 309,. 33 U. S. Code § 1319, - for a first offense of criminal negligence, the minimum fine is $2,500, with a maximum of $25,000 fine per day of violation - but should also be mandated by the District Court to actively engage in a community service program that would be specific to the restoration and rehabilitation of the stretch and reach of the Middle Fork of the South Platte River that has been impacted by the alleged unpermitted discharges.

2.     In a conservation enhancement proposal, "RIVER CORRIDOR CONCEPT PAPER - 2011 RIVER CORRIDORS INITIATIVE",  developed by Park County, Colorado executive officials for county aquatic resources improvement and augmentation, specific consideration was focused on the stretch and reach of the Middle Fork of the South Platte River in the region of the Alma to Fairplay river corridor.

3.     Narrative excerpts from the RIVER CORRIDOR CONCEPT PAPER - 2011 RIVER CORRIDORS INITIATIVE:  [[( N. B.) "This Concept Paper is prepared with the support from the Park County Board of County Commissioners."- as submitted by Thomas Eisenman, Park County Development Services Coordinator]] :

OVERVIEW

"This portion of the 2011 River Corridors Initiative Concept Paper relates to selected cold water rivers within Park County that are within the upper South Platte watershed. Each of the rivers is open to public access and is either held in fee title ownership by the Colorado Division of Parks and Wildlife (Division), or is open to

public access through agreements with other landowners. Exceptions would be for those sections of the Middle Fork of the South Platte adjacent to Fairplay and Alma.

"It is estimated that there are over 30 miles of rivers controlled by the Division that are open to public access. The majority of these streams support self-sustaining trout fisheries and the predominant use includes angling. With increased public demand for access to Colorado's river corridors there is an expanding use of such rivers and to support these uses, we propose increasing fishing and other recreational activities by restoring natural fish and wildlife habitat and by improving access with an expanded trail system that including "river walks" and educational opportunities.

"Matching funding and other partners may come from a variety of sources including the Park County Land and Water Trust Fund, National Heritage Area funding, Coalition of the Upper South Platte, The South Park Coalition, Save our South Park Water, Town of Fairplay, Town of Alma and private partnerships.

"According to data provided by the Division, Colorado residents within Park County provide an estimated 5,574,631 dollars in economic benefit and spend 281,882 hours fishing in Park County rivers annually. This data does not include angling use by non-residents, which likely accounts for 30% more benefit on top of the resident figures.  No data exists on annual river corridor use resulting from non-anglers, but such use is significant.

(Rev. 07/06)                                    13

• "Rivers including both the South and Middle Fork of the South Platte do have statewide significance, not only as trout fisheries, but are also important sources of water to the Denver Metropolitan area. These rivers are not in urban areas surrounded by buildings, condominiums and busy roads. Though they are within a two-hour drive of the Front Range from Pueblo to Denver, the rivers of rural Park County are still relatively wild. As such, they provide an increasingly unique and very sought-after opportunity for public access to natural and free flowing rivers.

• "The ecosystems of these rivers have been severely degraded over time due to impacts from various activities, including early mining, degraded riparian vegetation, overgrazing, dewatered agricultural lands and development. The cumulative impact of these activities has left portions of these rivers degraded to a level that significantly diminishes aquatic, riparian and wetland habitats. In turn, fishery populations are far below potential, and there is increasing loss of water quality. Terrestrial wildlife species including shorebirds, waterfowl and furbearers also suffer negative impacts. The public experience in being associated with these reaches of river is also diminished.

PROTECTION & RESTORATION OF RIVER & ADJACENT ECOSYSTEMS
"River habitat can be both protected, and damaged habitat can be restored through planned work within river channels and within supporting riparian buffer areas. A long history of such work in South Park by the ( Colorado) Division, private landowners and conservation groups, has generated a wealth of scientific information about the effectiveness of treatments aimed at restoring stream habitat

and fisheries quality.  Building on this information, these same partners have demonstrated success in terms of measurable results to both water quality and fish and wildlife habitat. The same science based opportunity exists regarding expanded protection of river riparian habitat, stream channel restoration and establishing additional critical buffer areas. Funding is a factor in limiting the scope of such an activity on a statewide basis, and a focus from the River Corridors Initiative on restoration would provide a significant benefit to these rivers.  In addition to the long-term benefits to river ecosystems, improved habitat would result in increased recreational opportunity in the form of angling, hunting, and other wildlife-related uses.

DESIGN AND IMPLEMENTATION OF WORK

"This Concept Paper includes sections of rivers within Park County and the upper South Platte watershed where it has been determined that work designed to restore and protect river, riparian, and wetland habitats can be effectively completed. Reestablishing and protecting existing riparian buffer areas along river sections form a central focus of the restoration approach. Priority areas were selected primarily on input from the Division based on the results of past projects and science-based knowledge of the results, including public benefits obtained from completed projects.

"If grant funding is obtained, projects will be designed and implemented based on input from the Division, Park County, Fairplay, Alma, private consultants and others. Actual projects will be based on mitigating ecological stressors and

restoring natural ecological processes that create self-sustaining high quality habitat. In South Park, these improvements can largely be accomplished by protecting and restoring riparian vegetation in addition to minimal direct channel treatments. On specific segments where natural conditions are degraded beyond recovery, we have proven the ability to re-create habitat with in-stream structures and channel restoration. In addition to in-channel river work, our projects will focus on proven methods to restore riparian vegetation and stream stability including fencing to keep livestock from damaging riparian, wetlands and buffer areas. In certain locations trails and parking areas should be installed to enhance public access. A River walk project proposed in and around Alma will provide river access, walking and bike trails, and wildlife observation decks. Further development and expansion of the Fairplay Beach Area would include hiking biking trails, river and lake access upstream, and picnic areas. Such work will be designed based on knowledge gained from past experience, which is significant in assuring that grant funding is spent effectively. Park County will administer the grant funding.

"Engineering designs and work completion schedules will be completed for each project, which will be of critical importance in gaining approval from the Army Corps of Engineers. Additionally, results will be documented in terms of measurable ecological parameters, fish and wildlife data, documentation of increased public opportunities, and quantification of the amounts of river and adjacent habitats restored and protected.

(Rev. 07/06)                                                    16

"In cases, inmates from the Colorado Department of Corrections may be used to complete approved projects. The Division has an ongoing program that uses inmates, which includes the opportunity for training in heavy earth moving equipment. Not only has this program benefited inmates in securing jobs when released, it has also allowed for considerable cost savings in accomplishing projects. Projects will also provide opportunity for local consultants and contractors to obtain work, which would be of considerable benefit to Park County.

PROPOSED RIVER CORRIDORS

"The Division of Parks and Wildlife has been involved in restoration of river, riparian and buffer areas within the upper South Park watershed for years and has spent approximately $1,108,589 dollars since 1998 on over 9 miles of river. This work has been completed in cooperation with many interests, including Park County. The results have long-term benefits for the economy of Park County, statewide anglers, landowners, ranchers, water municipalities and the overall public. Natural ecosystems that were in jeopardy have been restored and protected. Increased public access and opportunity to river areas have been provided. This is not an overstatement and the science based data exists to prove it. Unfortunately, there is a shortage of funding to expand such work in the future, which encouraged Park County to prepare this Concept Paper with the hope of securing grant funding for these river corridors.

*"The objective of this concept paper is to focus on reaches of rivers that are now controlled by the Division of Parks and Wildlife and open to public access, and on*

(Rev. 07/06)                                     17

*reaches of the Middle Fork that flows through Fairplay and Alma. Proposed projects will be designed to accomplish the following objectives on those rivers reaches selected by the Division in cooperation with Park County:*

o   Restore degraded river, riparian and wetland habitats by restoring natural river-based ecosystem function.

o   Protect restored habitat establishing buffer areas to assure long term benefits including land-use agreements and fencing to prevent overgrazing.

o   Complete projects in a manner that supports a natural ecosystem, including self-sustaining trout fisheries and those terrestrial wildlife species that depend on river ecosystems. Certain species may be determined to be in decline and candidates for listing as state/federal threatened, or endangered. The Division would make this species determination on a case-by-case basis.

o   Expand public access, including angling and other activities.

o   Conduct educational outreach designed to inform the public on the importance of river corridors and the wise use of such corridors.

o   Where applicable expand handicap access and youth angling opportunities.

o   Coordinate with all concerned in the design and implementation of projects.

PROPOSED RIVER SECTIONS

◇   <u>Middle Fork of the South Platte from Columbia Reservoir downstream to Alma, downstream to "Fairplay Beach".</u> Columbia Reservoir is open to public access and is heavily used and enjoyed. However, private lands nearby do not have public access. Alma has shown interest in establishing connectivity with their town by

developing a river walk trail upstream to Columbia Reservoir. As with Fairplay, opportunities exist for a variety of public uses.

◊  <u>Middle Fork of the South Platte from "Fairplay Beach" downstream to U.S. Highway 285.</u> This reach of river is within Fairplay, which is negotiating with private landowners to gain public access from Fairplay Beach downstream. In addition to the objective of gaining access to this mile of river, focus would be on creating habitat within the channel and establishing a riparian buffer area. This reach has been heavily mined in the past. Placer, hydraulic and dredge mining have rendered this valley completely unnatural, and as a result the fisheries habitat is severely altered. The area also supports severely diminished wetland habitat and non-functional buffer areas. In addition to the opportunity for created habitat, this reach is an ideal location for a unique river walk trail connecting Town of Fairplay property on either side of the valley, along with handicap, youth and other river related opportunities.

◊  Together, the reaches described above comprise approximately 11 miles targeted for improvement.

CONCLUSION

"This Concept Paper submitted by Park County proves a listing of those rivers where opportunities exist to complete projects that will restore, as well as protect, river, riparian and wetland habitats. Buffer areas will also be restored and protected. However, it is noted that other sections of river throughout Park County have equal opportunities for restoration and protection. Perhaps in the future additional funding may be available.





MIDDLE FORK OF THE SOUTH PLATTE RIVER
CORRIDOR PLANNING STUDY



AQUATIC AND WETLAND CONSULTANTS, INC.

- Public access will be expanded to these reaches of river for a variety of recreational activities, including angling, river walks, and educational tours, and handicap and youth opportunities.  We anticipate that these improvements could result in 25% increase in river-related recreation use.

- There will also be significant improvement in water quality, which is of benefit to downstream municipalities who depend on the upper South Platte as a major source of domestic water.

- Natural ecosystem will be restored and protected, which will benefit a diverse number of aquatic and terrestrial wildlife species.

- Increased and long-term economic benefits will occur directly to Park County, Town of Alma, Town of Fairplay, Hartsel and Colorado.

- The proximity of South Park to a major portion of Colorado's population further supports the importance of restoring and protecting rivers in the area.

Estimated Costs

- Stream and access development; approximately 1.14 million
- Land Acquisition: approximately 1.8 million
- Trails and educational interpretation signage; $630,000

Projected Matching Funds

- Park Land and Water Trust Fund; $500,000
- Town of Alma; $5,000
- Town of Fairplay; $5,000
- South Park Heritage: $900,000

(Rev. 07/06)                                        20

Projected In Kind

- Local & State; $ 100,000

4.    Were the District Court to find, in its discretion, that a judicially directed, with judicial review / jurisdiction to be retained for a period of five (5) years, was suitable as a CLAIM FOR RELIEF by directing the defendants Alma Placer Mine and Jim Murray to become "partners" in the restoration and rehabilitation of the Middle Fork of the South Platte River as proposed in the RIVER CORRIDOR CONCEPT PAPER – 2011 RIVER CORRIDORS INITIATIVE for the Middle Fork of the South Platte River, and a direction from the Court to the defendants were to be issued that the proposed "partnership" involve substantial planning, in-kind services for manpower and equipment, cooperation with engineering and project design, as well as participation on a project implementation group that would include other community-interested organizations and local and state governments, general community benefit could occur and river "health" would be abetted.

Community, within the region of discussion considered in this COMPLAINT has incorporated mining as a tradition and as a significant source of economy for greater than one hundred and fifty (150) years.  A newly imposed "partnership" extending comprehensive public /private cooperation and association for the betterment of precious natural resources could be a positive incident outcome.

## REQUEST FOR RELIEF

Plaintiff requests the following relief:

1.     That a penalty assessment as provided by law, section 309,. 33 U. S. Code § 1319, - for a first offense of criminal negligence, the minimum fine is $2,500, with a maximum of $25,000 fine per day of violation, be imposed; and,

That the Federal District Court for the District of Colorado stipulate that the defendants – the Alma Placer Mine and Jim Murray of High Mountain Mining Company, LLC – be required, as an element of community service, to actively participate as a partner with other organizations, businesses, local governments and non-profit corporations and associations to assist in the implementation of the conservation enhancement proposal: "RIVER CORRIDOR CONCEPT PAPER - 2011 RIVER CORRIDORS INITIATIVE", developed by Park County, Colorado executive officials for county aquatic resources improvement and augmentation.

Date: _11 January 2015_

Richard G. Hamilton, *pro se*

531 Front Street

Fairplay, Colorado 80440 -0156

720.483.2937 (mobile)

719.836.4619  (res)

rghamilton@skybeam.com

# Certificate of Service

I hereby certify that a copy of the foregoing pleading / document was mailed to / hand delivered to the defendants:

Jim Murray
3040 S. Vallejo Street
Englewood, Colorado  80110.

The Alma Placer Mine
2040 W. Hamilton Place
Englewood, Colorado 80110.

and, that two (2) prints of the Complaint and forms (one original and one true copy) have been hand delivered to:

The Clerk of the United States District Court for the District of Colorado,
Jeffrey P. Colwell, Clerk
Alfred A. Arraj United States Courthouse
901 19th. Street  Room A105
Denver, Colorado  80294 - 3589

Dated:  This twelfth ( 12th.)  day of January , 2015

Richard G. Hamilton, *pro se*
531 Front Street
Post Office Box 156
Fairplay, Colorado 80440 -0156
rghamilton@skybeam.com
719.836.4619 (res) /  720.483.2937  (mobile)

# APPENDIX

DOCUMENTS AND SUPPLEMENTAL MATERIALS PRESENTED TO THE UNITED

STATE DISTRICT COURT for the DISTRICT OF COLORADO

In re:

The Watershed of the Middle Fork of the South Platte                    , Plaintiff (s),
River, Park County, Colorado,

The South Park Coalition, a Non-Profit Corporation
531 Front Street
Post Office Box 156
Fairplay, Colorado,

and,

Richard G. Hamilton, pro se
Registered Agent of The South Park Coalition
531 Front Street
Post Office Box 156
Fairplay, Colorado .

v.


Alma Placer Mine                                                        , Defendant(s),
2040 W. Hamilton Place
Englewood, Colorado 80110

and,

Jim Murray
High Mountain Mining Company
3040 S. Vallejo Street
Englewood, Colorado 80110

_____        Defendant(s)




^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^

**EXHIBIT A:**

NOTICE OF INTENT - In compliance with 33 U.S.C. §1365(b)(1)(A),  -October 28, 2014. notice of the violations specified and of the intent to file suit; notice to the Administrator of the United States Environmental Protection Agency (EPA), and to the State of Colorado.

**EXHIBIT B:**

Colorado Division of Reclamation, Mining, and Safety Minerals Program *Inspection Report ID # M-1985-029 ( Alma Placer Mine / High Country Mining Co., LLC),* October 16, 2014.

**EXHIBIT C:**

Colorado Division of Reclamation, Mining, and Safety, Department of Natural Resources "Finding of Fact, Conclusions of Law and Order" Mine Land Reclamation Board - *Board Order of December 5, 2014 .*

**EXHIBIT D:**

Communication  (electronic transmission) from the Colorado Water Quality Control Division Clean Water Compliance Unit Manager Nathan Moore  indicating , "the Water Quality Control Division is not able to identify an active NPDES/CDPS discharge permit associated with the facility."

**EXHIBIT E:**

County of Park and Town of Fairplay November 6, 2014 letter to the Mined Land Reclamation Board RE: Reported Violation M-1985-029 .

**EXHIBIT F:**

Résumé for Richard G. Hamilton

# Notice of Intent

VIA CERTIFIED MAIL.
RETURN RECEIPT REQUESTED

October 27, 2014

Alma Placer Company LLC
2040 W. Hamilton Place
Englewood, Colorado 80110

(Registered Agent listed as Craig Camozzi. (Park County Assessor's Office)).

Dear Messrs. & Mmes.:

The undersigned Registered Agent, representing The South Park Coalition ("TSPC"), writes in regard to violations of the Federal Water Pollution Control Act, commonly known as the Clean Water Act ("CWA") by the alleged CWA Violator ("Violator").

Pursuant to authorization provided by section 505(a)(1) (33 U.S.C. 1365(a)(1)), T.S.P.C. hereby provides notice that it intends to file a civil action in federal district court against Violator for discharging pollutants from a point source to Middle Fork of the South Platte River, Park County, Colorado (coordinates: 39°17'3"N / 106°3'48"W – located in the Northwest corner of Park County, Colorado) via an unnamed tributary in violation of the Clean Water Act, as enacted by Congress "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." Section 301(a) of the Clean Water Act, at 33 U.S.C. Section 1311(a), prohibits the discharge of pollutants into waters of the United States except when authorized by a National Pollution Discharge Elimination System permit –

(N.P.D.E.S.permit) at 33 C.F.R. 1311 (a) and CWA 402, 33 U.S.C.1342 –
http://www.law.cornell.edu/uscode/text/33/1311.

Legal address of the subject commercial property at the locus of the
discharge is within Section 1, Township 9S, Range 78W, of the 6th. P. M.

Upon the expiration of the 60 day statutory waiting period, the plaintiff
anticipates that a citizen suit will be filed in federal district court.

BACKGROUND

The discharge of pollutants occurred October 3, 2014 to the Middle Fork of
the South Platte River in Park County, Colorado from a mining waterworks
facility located on Colorado State Highway # 9 adjacent to the Town of
Alma. According to Colorado State Department of Public Health and
Environment's (C.D.P.H.E.) Colorado 303(d) "List of Impaired Waters" – see
COSPUSO2c and COSPUSO2 b  – the Middle Fork of the South Platte River is
not now listed as an "impaired" by sediments or heavy metals pursuant to
the required by States by CWA Section 303(d), 33 U.S.C. Section 1313(d).

As a statement to the basis of the best information currently available, we,
TSPC, personally witnessed, and do believe, that the Violator engaged in
violations of the Clean Water Act.      .

LEGAL STANDARDS & VIOLATIONS

Congress enacted the Clean Water Act "to restore and maintain the
chemical, physical, and biological integrity of the Nation's waters." Section
301(a), 33 U.S.C. Section 1311(a), prohibits the discharge of pollutants into
waters of the United States except when authorized by a NPDES permit.

[ [  33 U.S. Code § 1311 – Effluent limitations ] ]  – (Current through Pub. L. 113–185).

**(a) Illegality of pollutant discharges except in compliance with law**
Except as in compliance with this section and sections  1312,  1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful.

"Waters of the United States" are defined by federal regulation as:

(1) All waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide;

(2) All interstate waters including interstate wetlands;

(3) All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce including any such waters: (i) Which are or could be used by interstate or foreign travelers for recreational or other purposes; or (ii) From which fish or shellfish are or could be taken and sold in interstate or foreign commerce; or (iii) Which are used or could be used for industrial purposes by industries in interstate commerce;

(4) All impoundments of waters otherwise defined as waters of the United States under this definition;

(5) Tributaries of waters identified in paragraphs (s)(1) through (4) of this section;

(6) The territorial sea;

(7) Wetlands adjacent to waters (other than waters that are themselves wetlands) identified in paragraphs (s)(1) through (6) of this section; waste

treatment systems, including treatment ponds or lagoons designed to meet the requirements of CWA (other than cooling ponds as defined in 40 CFR 423.11(m) which also meet the criteria of this definition) are not waters of the United States.

[[ Title 33 › Chapter 26 › Subchapter V › § 1365 ]]

33 U.S. Code § 1365

 **(a) Authorization; jurisdiction**

Except as provided in subsection (b) of this section and section 1319 (g)(6) of this title, any citizen may commence a civil action on his own behalf—

**(1)** against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

**(2)** against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319 (d) of this title.

**(b) Notice**

No action may be commenced—

**(1)** under subsection (a)(1) of this section—

4

**(A)** prior to sixty days after the plaintiff has given notice of the alleged violation

**(i)** to the Administrator,

**(ii)** to the State in which the alleged violation occurs, and

**(iii)** to any alleged violator of the standard, limitation, or order, or

**(B)** if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

**(2)** under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the Administrator, except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of sections 1316 and 1317 (a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

### (c) Venue; intervention by Administrator; United States interests protected

**(1)** Any action respecting a violation by a discharge source of an effluent standard or limitation or an order respecting such standard or limitation may be brought under this section only in the judicial district in which such source is located.

**(2)** In such action under this section, the Administrator, if not a party, may intervene as a matter of right.

**(3)** Protection of interests of United States — Whenever any action is brought under this section in a court of the United States, the plaintiff shall serve a copy of the complaint on the Attorney General and the Administrator. No consent judgment shall be entered in an action in which

the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

**(d) Litigation costs**

The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate. The court may, if a temporary restraining order or preliminary injunction is sought, require the filing of a bond or equivalent security in accordance with the Federal Rules of Civil Procedure.

**(e) Statutory or common law rights not restricted**

Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).

**(f) Effluent standard or limitation**

For purposes of this section, the term "effluent standard or limitation under this chapter" means

**(1)** effective July 1, 1973, an unlawful act under subsection (a) of section 1311 of this title;

**(2)** an effluent limitation or other limitation under section 1311 or 1312 of this title;

**(3)** standard of performance under section 1316 of this title;

**(4)** prohibition, effluent standard or pretreatment standards under section 1317 of this title;

**(5)** certification under section 1341 of this title;

6

**(6)** a permit or condition thereof issued under section 1342 of this title, which is in effect under this chapter (including a requirement applicable by reason of section 1323 of this title); or

**(7)** a regulation under section 1345 (d) of this title,. [1]

## (g) "Citizen" defined

For the purposes of this section the term "citizen" means a person or persons having an interest which is or may be adversely affected.

ARGUMENT:

Violator has been in possession of the subject property since October 20, 2009 as evidenced by conveyance of a Special Warranty Deed – Reception # 666325 – Park County, Colorado Clerk and Recorder's Office– from Grantor Ducommun Business Trust. http://mines.findthebest.com/l/82892/Alma-Placer

RELIEF SOUGHT:

Upon completion of the sixty (60) day notice period, the TSPC intends to initiate a citizen suit pursuant to CWA Section 505(a), 33 U.S.C. 1365(a). TSPC demands that the Violator immediately cease all discharges in violation of Section 33 U.S. Code § 1311(a). If Clean Water Act violations do not cease, the TSPC will seek damages and reasonable costs, attorney and expert fees, and any other relief deemed just and appropriate by the Federal District Court for the District of Colorado – Denver Division –  pursuant to 33 U.S.C. 1365(d).

PARTY GIVING NOTICE:

The South Park Coalition is a non-profit organization dedicated to securing acceptable and healthy air, land, and water for all who call the South Park region of Park County, Colorado home – as well as seeking to assure the protection and safeguards of the natural environment for the use and enjoyment of the public. The South Park Coalition is a not-for-profit environmental and conservation organization, organized under the laws of the State of Colorado. TSPC is comprised of over 100 members individual members throughout the state. Many of these members live, work, and/or recreate within, or downstream, within regions proximate to the Middle Fork of the South Platte River. Accordingly, TSPC is a "citizen" within the meaning of section 505 (g) of the CWA, and has standing to bring the suit noticed herein.

The full name, address and telephone number of the party providing notice is:

The South Park Coalition
Richard G. Hamilton,
Registered Agent for The South Park Coalition (TSPC)
531 Front Street
Fairplay, Colorado 80440 – 0156
719.836.4619
rghamilton@skybeam.com

NOTICE PROVIDED TO:
[ [  Copies by certified mail:  ] ]

❑       United States Environmental Protection Agency
        Gina McCarthy, EPA Administrator
        Mail code: 1101A

1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460
(202)564-4700

❑   Colorado Department of Public Health and Environment
Nathan Moore, Unit Manager
Clean Water Compliance Unit
Water Quality Control Division
Colorado Department of Public Health and Environment
4300 Cherry Creek Drive South
Denver, CO 80246-1530
nathan.moore@state.co.us
303-692-3555

ACTION TAKEN:
•   C.D.P.H.E. NOTIFIED: W.Q.C.D.: MICHELLE THIEBAUD, DAVID KURZ,
CAMERON WILKINS, KELLY JACQUES, ANNE MARIE GOOLSBY
•   CASE NUMBER 2014 - 0614
•   DATE ENTERED:  10/ 03/ 2014
•   RESPONDERS: HIGH MOUNTAIN MINING LLC,  DRMS

"MIKE CUNNINGHAM, WITH D.R.M.S., WAS CONTACTED AND IS ON HIS WAY UP
TO THE MINE SITE, AS IS JIM MURRAY WITH THE MINING COMPANY. I BELIEVE
THAT PARK COUNTY HAS ALSO BEEN NOTIFIED AND ARE ON THE WAY."

❑   VIOLATOR:
Jim Murray
2040 W Hamilton Pl
Sheridan, Colorado 80110
303-748-2306

9

28 October 2014

United States Environmental Protection Agency
Gina McCarthy, EPA Administrator
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Colorado Department of Public Health and Environment
Nathan Moore, Unit Manager
Clean Water Compliance Unit Water
Quality Control Division
Colorado Department of Public Health and Environment
4300 Cherry Creek Drive South
Denver, CO 80246-1530
nathan.moore@state.co.us

VIOLATOR:
Jim Murray
2040 W Hamilton Pl
Sheridan, Colorado 80110
303-748-2306

Dear Messrs. & Mmes.:

The undersigned Registered Agent, representing The South Park Coalition
("TSPC"), writes in regard to violations of the Federal Water Pollution
Control Act, commonly known as the Clean Water Act ("CWA") by the
alleged CWA Violator ("Violator").

Find here a communication to the relevant regulatory agencies, and to the violator of provisions within the federal Clean Water Act, of the intent of The South Park Coalition (TSPC ) to initiate a civil action in the U. S. District Court for the District of Colorado … "Pursuant to authorization provided by section 505(a)(1) (33 U.S.C. 1365(a)(1)).   The South Park Coalition ( T.S.P.C.) hereby provides notice that it intends to file a civil action in federal district court against Violator for discharging pollutants from a point source to Middle Fork of the South Platte River, Park County, Colorado (coordinates: 39°17'3"N / 106°3'48"W – located in the Northwest corner of Park County, Colorado), via an unnamed tributary, in violation of the Clean Water Act, as enacted by Congress "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."

Submitted, this ____th. day of October, 2014;

_____

Richard G. Hamilton, Registered Agent to The South Park Coalition
Fairplay, Colorado  80440 – 0156
rghamilton@skybeam.com



# COLORADO DIVISION OF RECLAMATION, MINING AND SAFETY
## MINERALS PROGRAM INSPECTION REPORT
### PHONE: (303) 866-3567

**The Division of Reclamation, Mining and Safety has conducted an inspection of the mining operation noted below. This report documents observations concerning compliance with the terms of the permit and applicable rules and regulations of the Mined Land Reclamation Board.**

| MINE NAME:<br>Alma Placer Mine | MINE/PROSPECTING ID#:<br>M-1985-029 | MINERAL:<br>Gold | COUNTY:<br>Park |
|---|---|---|---|
| INSPECTION TYPE:<br>Monitoring | INSPECTOR(S):<br>Michael A. Cunningham | INSP. DATE:<br>October 3, 2014 | INSP. TIME:<br>11:30 |
| OPERATOR:<br>High Mountain Mining Co., LLC | OPERATOR REPRESENTATIVE:<br>Jim Murray | TYPE OF OPERATION:<br>112 - Hard Rock Regular Operation | |

| REASON FOR INSPECTION:<br>High Priority | BOND CALCULATION TYPE:<br>None | BOND AMOUNT:<br>$200,878.00 |
|---|---|---|
| DATE OF COMPLAINT:<br>NA | POST INSP. CONTACTS:<br>Colo. Health Dept. | JOINT INSP. AGENCY:<br>None |
| WEATHER:<br>Clear | INSPECTOR'S SIGNATURE: | SIGNATURE DATE:<br>October 16, 2014 |

**The following inspection topics were identified as having Problems or Possible Violations. OPERATORS SHOULD READ THE FOLLOWING PAGES CAREFULLY IN ORDER TO ASSURE COMPLIANCE WITH THE TERMS OF THE PERMIT AND APPLICABLE RULES AND REGULATIONS. If a Possible Violation is indicated, you will be notified under separate cover as to when the Mined Land Reclamation Board will consider possible enforcement action.**

**INSPECTION TOPIC:** Hydrologic Balance
**PROBLEM/POSSIBLE VIOLATION:** Possible Violation: The Operator is responsible for discharging water from the settling ponds into the Middle Fork of the South Platte River. This is a possible violation pursuant to C.R.S. 34-32-116(7)(g) for failure to minimize disturbances to the prevailing hydrologic balance of the surrounding area.
**CORRECTIVE ACTIONS:** This possible violation will require a hearing before the Mined Land Reclamation Board. The schedule and other details for the MLRB hearing will be provided under a separate document to be sent via certified mail to the Operator.
**CORRECTIVE ACTION DUE DATE:** 11/19/14

**INSPECTION TOPIC:** Gen. Compliance With Mine Plan
**PROBLEM/POSSIBLE VIOLATION:** Possible Violation: The Operator was not following the approved water management plan for the operation. This is a possible violation pursuant to C.R.S. 34-32-124 for failure to follow the conditions of order, permit or regulation.
**CORRECTIVE ACTIONS:** This possible violation will require a hearing before the Mined Land Reclamation Board. The schedule and other details for the MLRB hearing will be provided under a separate document to be sent via certified mail to the Operator.
**CORRECTIVE ACTION DUE DATE:** 11/19/14

**INSPECTION TOPIC:** Off-site Damage
**PROBLEM/POSSIBLE VIOLATION:** Possible Violation: The Operator is responsible for the release of water from the permitted area of the mine. This is a possible violation pursuant to C.R.S. 34-32-116(7)(h) for failure to

protect areas outside of the affected land from damage occurring during the mining operation.

**CORRECTIVE ACTIONS:** This possible violation will require a hearing before the Mined Land Reclamation Board. The schedule and other details for the MLRB hearing will be provided under a separate document to be sent via certified mail to the Operator.
CORRECTIVE ACTION DUE DATE: 11/19/14

## OBSERVATIONS

The inspection was conducted by Michael Cunningham of the Division of Reclamation, Mining and Safety (Division). Jim Murray, Tom Gibson and Arnis Townsend were present on behalf of the High Mountain Mining Company. The Alma Placer Mine is located on the east end of the Town of Alma in Park County, Colorado. The site is permitted for 216.10 acres, with a maximum allowed disturbance of 136.80 acres. The primary commodities mined are gold and aggregate.

On October 3, 2014, the Division received an email from Mr. Tom Eisenman, the Park County Administrator. The email stated the Middle Fork of the South Platte River was full of sediment and the source of the sediment was identified as the Gloria Z Mine (M-1984-094). Following the receipt of the email from Mr. Eisenman, the Division received a call from Mr. Greg Lewicki, the environmental consultant for High Mountain Mining Company. Mr. Lewicki informed the Division that the Alma Placer Mine was believed to be the source of the sediment in the river. According to Mr. Lewicki, mine personnel noticed a substantial amount of sediment in the river on the morning of the October 3, 2014. The specific source of the sediment had not been identified, but the occurrence of sediment in the river coincided with the placement of a trommel on the east side of the active mining area. Wash water from the trommel was being discharged into an existing sediment pond, labeled as 'Existing Settling Pond F' on Exhibit C-4: Hydrology Map. The Operator started running the trommel in the new location and discharging water to Settling Pond F on October 2, 2014. Mr. Lewicki also informed the Division the Colorado Department of Public Health and Environment had been notified of the incident.

The purpose of the inspection was to determine if the source of the sediment in the Middle Fork of the South Platte River was related to mining activity at the Alma Placer Mine. The Division conducted an inspection of the mine site and inspected the Middle Fork of the South Platte River. The river was inspected for a distance of approximately 0.6 miles beginning at the mine site and then proceeding downstream.

### Hydrologic Balance:

The Division traversed the mine site, beginning near the active mining area where the trommel was located. The Operator ceased operating the trommel on the morning of October 3, 2014 and wash water was no longer being discharged into Settling Pond F. At the time of the inspection, Settling Pond F still contained wash water. According to the Operator, the water level had not decreased in the past 24 hour period. The Division walked the perimeter of Settling Pond F and did not observe any surface breaches which would have allowed the wash water to escape from the mine site.

The Division then proceeded to inspect the pump house and the settling ponds which receive wash water from the main processing building. The Operator holds a water right for 60 cfs; the water for processing at the mine is obtained from the main diversion point on the Columbia Ditch No. 1, which is located on the north side of the site. In 1999, the Operator obtained approval from the Office of the State Engineer and the Division

to install an alternate diversion point on the Middle Fork of the South Platte River. A pump house was installed at the alternate diversion point, which is located on the north side of the river adjacent to the main entrance. The pump was running at the time of the inspection and water was being pumped from the alternate diversion point to the processing building via a 12" pipe. As water is discharged from the processing building it enters a series of three settling ponds before discharging into Pond 4, the last in a series of four settling ponds which is located immediately north of the pump house. Water from Pond 4 is re-circulated back to the processing building or is discharged through an overflow pipe on the east side of the pond. The Division observed water discharging from Pond 4 into a series of shallow settling ponds located on the east side of the access road. The wash water then infiltrates into the alluvium or evaporates. Water from the pump house is directed to either Pond 4 or the processing building; the direction of the flow of water is controlled by a valve in the water line located on the east side of Pond 4. The discharge pipe into Pond 4 is situated at an elevation below that of the overflow pipe. The Division inspected the earthen dam located on the south side of Ponds 3 and 4; the earthen dam did not show any signs of failure or overtopping.

The water in the settling ponds contained a significant amount of sediment and fines. According to the Operator, the water in Pond 4 is typically much cleaner than what the Division observed. The upper settling ponds are periodically cleaned out using a backhoe. Ponds 3 and 4 are too large to clean out mechanically. The Operator was in the process of setting up a floating dredge to clean the sediment from Ponds 3 and 4. The fines are salvaged and stockpiled for use during final reclamation.

## Off-site Damage:

The Division, along with the mine personnel, proceeded to inspect the Middle Fork of the South Platte River. The section of the river immediately on the south side of the mine site contained clear water. The water started to become turbid approximately 0.3 miles downstream from the location of the pump house. As noted above, the Division inspected approximately 0.6 miles of the river downstream from the Alma Placer Mine. The water became increasingly turbid as the distance from the mine site increased and a substantial amount of fines could be seen on the river bed and on the banks of the river. While inspecting the river, the Division met with Mark Lamb, Division Wildlife Manger with Colorado Parks and Wildlife (CPW). Mr. Lamb was responding to the incident and was meeting with a fish biologist to assess the impact of the sediment on fish in the river. Mr. Lamb later informed the Division that they did not observe any immediate impacts to fish in the river. Both sides of the river were inspected in an effort to identify potential sources of the sediment. While inspecting an area of the river downstream from the mine site, the Division was contacted by Mr. Lamb who was at a different location upstream and adjacent to the pump house. Mr. Lamb notified the Division that he observed sediment and wash fines on the banks of the river near the pump house.

The Division returned to the mine site to inspect the area of the river adjacent to the pump house. While traversing the north side of the river bank, the Division observed a pipe which extended into the river. The Operator informed the Division the pipe was the intake pipe for the alternate diversion point. Initially, the Division had been informed the water was pumped through the alluvium rather than directly from the river. The inflow of water into the pipe had created a small pool on the bank of the river. The Division observed fines on the bottom and sides of the pool, but did not observe any fines immediately downstream on the river bank. The Operator informed the Division there was a check valve in the water line which would prevent back-flow through the intake pipe. However, the Operator was unsure of the exact location of the check valve.

At the conclusion of the inspection, the Division had determined that any discharge of sediment into the Middle Fork of the South Platte River did not occur as a result of a surface breach at the mine site. In addition, the amount of sediment observed in the river and the speed with which it appeared indicated the sediment was not being conveyed through the alluvium, but rather had been directly conveyed into the river. The only potential source of sediment which was identified during the inspection was the intake pipe near the pump house. The Operator committed to not operating the trommel or discharging wash water into the settling ponds until such time as the source of sediment was identified. In addition, the Operator committed to locating the check valve in order to determine if it had failed.

Following the inspection, the Division contacted Mr. Murray via telephone and requested that all mining operations cease until the source of the sediment was identified. In addition, the Division requested that High Mountain Mining Company provide a plan for identifying the source of the sediment discharge as well as measures taken to prevent any future discharge of sediment. Mr. Murray agreed to comply with the Division's request. On October 4, 2014, Mr. Murray notified the Division via telephone that the source of the sediment discharge had been identified. Mr. Murray informed the Division the water line from the alternate diversion point did not have a check valve to prevent back-flow. In addition, it was determined the valve on the freshwater line was left in the wrong position at the end of the work shift on October 2, 2014. The valve is normally left in the position which directs water to the processing building; however, the valve was set to direct water to Pond 4. The pump was turned off at approximately 9:00pm on October 2, 2014. As noted above, the level of the discharge pipe into Pond 4 was located below the water surface level. When the pump was turned off, the water from Pond 4 back-flowed into the river through the intake pipe. The discharge of sediment laden water continued until the next morning when the pump was turned back on. The Alma Placer Mine does not use chemicals in the processing plant; the water which entered the river contained silts and clays which had been washed from the placer deposits.

On October 5, 2014, High Mountain Mining Company provided the Division with a plan to prevent future discharges of sediment into the Middle Fork of the South Platte River. The Operator committed to taking the following actions:

1. The fresh water discharge pipe to Pond 4 will be raised to an elevation above that of the overflow pipe.
2. A check valve will be installed on the end of the fresh water pipe and will be located above ground.
3. A sign will be installed at the valve which directs water to either Pond 4 or the processing building.
4. Employees will be re-trained on the correct operation of pond systems and valves.
5. Sediment from Ponds 3 and 4 would be cleaned out as planned.

**General  Compliance with Mine Plan:**

The Division reviewed the Mining Plan which was most recently updated through Amendment No. 4 in 2004. The Mining Plan states wash water from the processing plant will discharge into four ponds (Farley Pond 1-4) before the water enters a collection ditch and then flows into Pond A (referred to as Pond 4 throughout this report). Based on a review of an aerial photograph of the site and observations made during the inspection, the Division has determined the Operator has deviated from the approved sediment collection plan. Currently, the water from the processing plant flows through two upper ponds before flowing into a collection ditch which then flows into two lower ponds. In addition, Exhibit C-4: Hydrology Map depicts the fresh water line running from the pump house directly to the processing plant. The map does not depict the fresh water line running to Pond 4 and the Mine Plan does not state that Pond 4 would be filled by the fresh water line.

Based on observations made during this inspection, the Division has reason to believe the Operator is in violation of the following:

1. C.R.S. 34-32-116(7)(g) for failure to minimize disturbances to the prevailing hydrologic balance of the affected lands and the surrounding area and to the quality and quantity of water in surface and groundwater systems both during and after the mining operation and during reclamation.

2. C.R.S. 34-32-116(7)(h) for failure to protect areas outside of the affected land from slides or damage occurring during the mining operation and reclamation.

3. C.R.S. 34-32-124 for failure to comply with the conditions of an order, permit or regulation.

The possible violation will be scheduled for the November 19-20, 2014 Mined Land Reclamation Board Hearing. Notice of such hearing will be sent under separate cover.

This concluded the inspection.

PERMIT #: M-1985-029
INSPECTOR'S INITIALS: MAC
INSPECTION DATE: October 3, 2014

### PHOTOGRAPHS



1. Trommel located near active mining area.



2. Settling Pond F - receiving water from trommel.

PERMIT #: M-1985-029
INSPECTOR'S INITIALS: MAC
INSPECTION DATE: October 3, 2014



3. Settling Pond F.



Fresh water discharge pipe.

Overflow Pipe.

4. East side of Pond 4.

PERMIT #: M-1985-029
INSPECTOR'S INITIALS: MAC
INSPECTION DATE: October 3, 2014



5. **Middle Fork of South Platter River - adjacent to the pump house.**



6. **Middle Fork of South Platter River - approx. 0.3 miles downstream from the pump house.**

PERMIT #: M-1985-029
INSPECTOR'S INITIALS: MAC
INSPECTION DATE: October 3, 2014



Accumulation of fines around the intake pipe.

Intake pipe.

7. Intake pipe on the Middle Fork of South Platte River.



8. View of the Fairplay beach above the Town of Fairplay.

PERMIT #: M-1985-029
INSPECTOR'S INITIALS: MAC
INSPECTION DATE: October 3, 2014



9. Middle Fork of the South Platte River - downstream of the Fairplay beach.